In the Matter of FUTURONICS
CORPORATION, Debtor.

No. 79 Civ. 6305 (KTD).

United States District Court,
S. D. New York.

June 26, 1980.

Finley, Kumble, Wagner, Heine & Underberg, New York City, for Futuronics Corp.; Gary L. Blum, Mitchell I. Sonkin, New York City, of counsel.

Hall, Dickler, Lawler, Kent & Howley, New York City, for Special Counsel Israel & Raley; Mortimer S. Gordon, Joseph Chase, New York City, of counsel.

Arutt, Nachamie, Benjamin, Lipkin & Kirschner, P. C., New York City, for Arutt, Nachamie and Benjamin; Alex Spizz, New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

Attorneys are officers of the court and must conduct themselves accordingly.

They are professionals and, as such, are to be held to a higher standard in the discharge of their duties in this regard. *Arlan's Department Stores, Inc.*, 615 F.2d 925 (2d Cir. 1979). This is especially true in the context of a Chapter XI proceeding where the debtor's counsel acts as a fiduciary. *Id.* at 932–33. The court must necessarily rely extensively upon the integrity of debtor's counsel in the handling and administration of a debtor's assets. However, the conduct involved in the case at bar exhibits a total disregard of an attorney's status as a court officer and a fiduciary. And, although the conduct to which I refer was limited to a few individuals, it acts to fuel the fires which, unfortunately, tend to char the entire profession.

This is an appeal from the decision of Stanley T. Lesser, Bankruptcy Judge, determining the allowances to be paid to the law firms of Arutt, Nachamie, Benjamin, Lipkin & Kirschner, P.C. and Israel & Raley. The salient facts are as follows.

In 1974, the Futuronics Corporation [hereinafter referred to as "Futuronics"] was engaged in the business of manufacturing military equipment for the United States Government. In December of 1974, the financial condition of Futuronics had deteriorated to the point where the corporation, through its President, Albert Blanck, began to explore the possibility of seeking protection from its creditors under the Bankruptcy Act. To this end, Mr. Blanck spoke with representatives of the law firm of Arutt, Nachamie & Benjamin [hereinafter referred to as "AN&B"], an experienced bankruptcy firm. These talks progressed and it was ultimately determined that a filing under Chapter XI of the Bankruptcy Act was appropriate. The petition was prepared by AN&B and, on January 3, 1975, it was filed. Upon the filing, AN&B was appointed by the court as counsel for Futuronics. The action was originally assigned to Bankruptcy Judge Herzog. Upon his retirement from the bench, the case was assigned to Bankruptcy Judge Stanley T. Lesser.

Apparently, a large part of the debtor's potential assets hinged upon a number of government contracts for the production of military equipment. It was the debtor's position that these contracts had been wrongfully terminated by the government. By virtue of this wrongful termination, the debtor claimed entitlement to a substantial damage award.

In light of these government contracts, and the potential assets to be realized therefrom, Futuronics, again through the efforts of its President, Albert Blanck, sought to secure the services of a law firm versed in the area of government contracts to prosecute these claims. The search yielded the firm of Israel & Raley [hereinafter referred to as "I&R"]. On March 11, 1975, Judge Herzog signed an order permitting the retention of I&R as special counsel to Futuronics for the purpose of prosecuting these claims against the government.

The firm of AN&B continued to represent the debtor through most of 1977. In September of that year, the firm was replaced by the firm of Schwartz & Sachs, P.C., which was comprised of former members of the AN&B firm. Thereafter, in October, 1978, the Schwartz firm was itself replaced as debtor's counsel by the firm of Finley, Kumble, Wagner, Heine & Underberg [hereinafter referred to as "Finley Kumble"].

The essence of the dispute between the parties is what fees, if any, are collectable by AN&B and I&R for services rendered by them to the debtor while serving as its counsel and special counsel, respectively. More particularly, there are two questions presented herein. They are: what binding effect, if any, is to be afforded the order of Judge Herzog, dated March 11, 1975, appointing I&R as special counsel to Futuronics and which, through the attached affidavit of Mr. Israel, incorporated a contingent fee arrangement; and whether the conduct of AN&B and I&R in securing the appointment of I&R as special counsel, the facts and circumstances surrounding their compensation and retainer agreements as well as the securing of court approved interim

payments to I&R, were violative of the Bankruptcy Rules and warranted the reduction and/or denial of the requested compensation.

Judge Lesser initially found that Judge Herzog's March 11th order did not irrevocably commit the court with respect to the fact and manner of I&R's compensation. In addition, after conducting extensive hearings concerning the fees to be awarded AN&B and I&R, he concluded that both firms had breached their respective duties as fiduciaries of the debtor's estate, and as officers of the court, by failing to disclose an impermissible "fee splitting agreement." Judge Lesser also found that these breaches were violative of Rules 215 and 219 of the Bankruptcy Rules and were of sufficient magnitude to warrant the return to I&R of all fees shared between it and AN&B as well as a reduction in the fees collectable by I&R.

For the reasons stated below, I affirm that portion of Judge Lesser's opinion finding that the March 11, 1975 order of Judge Herzog was reviewable by Judge Lesser, and that the conduct of AN&B and I&R in connection with that order, as well as their continued failure to apprise the court of an otherwise impermissible fee arrangement, constituted violations of Rules 215 and 219 of the Bankruptcy Rules. However, I reverse that portion of Judge Lesser's opinion with respect to the amount of fees collectable by the firms and direct that both requests for compensation must be denied in their entirety.

Before addressing what finality attached to Judge Herzog's March 11th order, it is necessary to set forth the facts leading up to the entry of that order. It is undisputed that the March 11th retention order was not the first order presented to Judge Herzog seeking retention of I&R as special counsel. An earlier proposed order of retention had been presented to Judge Herzog in February, 1975, and was rejected by him. This earlier proposed order, as well as the March 11th order, was not presented to Judge Herzog on notice to the Creditors' Committee or its counsel. Thus, no objections to

the proposed order were raised by the parties. Rather, Judge Herzog rejected the proposed order, *sua sponte*. Unfortunately, he did not state his reasons for doing so on the record. However, the extensive record below, with respect to the fees in issue, supplies more than sufficient evidence from which Judge Herzog's motives may be gleaned.

In January, 1975, a retainer letter was executed by I&R and AN&B. The agreement provided, in pertinent part, that I&R would pay AN&B "one-third of all fees received for professional legal services and assistance agreed to be rendered by the firm of [AN&B] to the law offices of [I&R] in relation to the contract claims of Futuronics against the United States Government."

This retainer agreement was forwarded to AN&B for its signature as well as that of the debtor, Futuronics. Accompanying the agreement was the affidavit of Mr. Israel which was apparently attached as an exhibit to the proposed retention order rejected by Judge Herzog in February, 1975. The affidavit, a mirror of the retainer agreement, provided: "Based on the services agreed to be rendered by [AN&B], [I&R has] agreed to distribute fees received by us on a basis of two-thirds to ourselves [I&R] and one-third to [AN&B]."

Upon rejection of the February retention order, a revised retainer agreement, as well as a revised affidavit, were prepared by I&R and sent to AN&B. The new retainer agreement provided:

> In view of the fact that we will be looking to your law firm for legal services and assistance in connection with the matters we are undertaking under the agreement, and may be working through your firm with the creditors to try to effect an agreement with the United States, I would suggest that you prepare appropriate billings for your time and, at the conclusion of this matter, we could go to the Court and recommend to them how the fees are to be distributed. Please provide us with copies of your time records.

A new proposed order, and a revised affidavit, were submitted to Judge Herzog. In addition to omitting any reference to the new retainer agreement quoted above, the order provided that "no prior application" had been made for the relief requested therein. This order was signed by Judge Herzog and provided in pertinent part:

ORDERED, that FUTURONICS CORPORATION be and it hereby is authorized to retain the firm of FRED ISRAEL for the purposes set forth in the affidavit of Mr. Israel, which is annexed hereto and made part hereof. Compensation of Mr. Israel shall be in accord with Paragraphs 8 and 9 of Mr. Israel's affidavit.

The compensation provisions contained in the Israel affidavit provided:

8. That an advance against out-of-pocket expenses in the amount of $2,500.00 will be paid to the Law Offices of Fred Israel from first available funds.

9. That in addition to the payment of all out-of-pocket expenses and the foregoing retainer, the Law Offices of Fred Israel will be paid fees for professional services rendered, according to the following schedule:

 a. Contract No. F34601–70–C–3556, U.S. Air Force, Sacramento, California: One-third of all progress payments released and paid to Debtor—hourly rate against 20%, whichever is greater, of all other funds recovered by or contract adjustments or any other increases in contract price to Debtor.

 b. Contract No. M00027–69–C–0045, U.S. Marine Corps: One-third of all funds recovered by or contract adjustments or any other increases in contract price to Debtor.

 c. Contract No. DAAB05–71–C–3703, U.S. Army, ECOM: One-third of all funds recovered by or contract adjustments or any other increases in contract price to Debtor.

 d. Contract No. DAAB07–74–C–0327, U.S. Army, ECOM:

Contract No. DAAB07–70–C–4417, U.S. Army, ECOM:

Contract No. DAAB05–73–C–1002, U.S. Army, ECOM:

Contract No. DAAB05–74–C–1300, U.S. Army, ECOM:

Contract No. F19628–74–C–0119, U.S. Air Force, Hanscom Field:

and

all other Contracts between Debtor and the United States Government: One-third of all Progress Payments released and paid to Debtor—hourly rate against 20%, whichever is greater, of all other funds recovered by or contract adjustments or any other increases in contract price to Debtor.

Rule 215 of the Bankruptcy Rules concerns the retention of debtor's counsel and provides in pertinent part:

(a) Conditions of Employment of Attorneys and Accountants. No attorney or accountant for the trustee or receiver shall be employed except upon order of the court. The order shall be made only upon application of the trustee or receiver, stating the specific facts showing the necessity for such employment, the name of the attorney or accountant, the reasons for his selection, the professional services he is to render, and to the best of the applicant's knowledge all of the attorney's or accountant's connections with the bankrupt, the creditors, or any other party in interest, and their respective attorneys and accountants.

If the attorney or accountant represents or holds no interest adverse to the estate in the matters upon which he is to be engaged, and his employment is in the best interest of the estate, the court may authorize his employment. . . . The employment of any attorney or accountant shall be only for the purposes specified in the order, but the court may authorize a general retainer of an attorney when necessity therefor is shown.

(b) Employment of Attorney or Accountant with Adverse Interest. If without disclosure any attorney or accountant employed by the trustee or receiver shall represent or hold, or shall have represent-

ed or held, any interest adverse to the estate in any matter upon which he is so employed, the court may deny the allowance of any compensation to such attorney or accountant, or the reimbursement of his expenses, or both, and may also deny any allowance to the trustee or receiver if it shall appear that he failed to make diligent inquiry into the connections of such attorney or accountant.

. . . . .

(f) Services Rendered by Member or Associate of Firm of Attorneys or Accountants. If, under this rule, a law partnership or corporation is employed as an attorney, or an accounting partnership or corporation is employed as an accountant, or if a named attorney or accountant is employed on behalf of a professional partnership or corporation, any member or regular associate of the firm may act for the attorney or accountant so employed, without further order of the court, and his services may be compensated as services of the attorney or accountant in accordance with Rule 219.

Rule 219, dealing with compensation, provides:

(a) Application for Compensation or Reimbursement. A person seeking compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered and expenses incurred, (2) the amounts requested. An application for compensation shall include a statement by the applicant as to what payments have theretofore been made or promised to him for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation he has previously received has been shared and whether an agreement or understanding exists between the applicant and any other person for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any such

sharing of compensation or agreement or understanding therefor, except that the details of any agreement by the applicant for the sharing of his compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other person on his behalf.

(b) Disclosure of Compensation Paid or Promised to Attorney for Bankrupt. Every attorney for a bankrupt, whether or not he applies for compensation, shall file with the court on or before the first date set for the first meeting of creditors, or at such other time as the court may direct, a statement setting forth the compensation paid or promised him for the services rendered or to be rendered in connection with the case, the source of the compensation so paid or promised, and whether the attorney has shared or agreed to share such compensation with any other person. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of his compensation with a member or regular associate of his law firm shall not be required.

. . . . .

(d) Restriction on Sharing of Compensation. Except as herein provided, a person rendering services in a bankruptcy case or in connection with such a case shall not in any form or guise share or agree to share the compensation paid or allowed him from the estate for such services with any other person, nor shall he share or agree to share in the compensation of any other person rendering services in a case under this title or in connection with such a case. This rule does not prohibit an attorney or accountant from sharing his compensation as trustee, receiver, attorney, or accountant with a member or regular associate of his firm, or from sharing in the compensation received by

his firm or by any other member or regular associate thereof, and does not prohibit an attorney for a bankrupt or for a petitioning creditor from sharing his compensation for services rendered with any other attorney contributing thereto. If a person violates this subdivision, the court may deny him compensation, may hold invalid any transaction subject to examination under Rule 220 to which he is a party, or may enter such other order as may be appropriate.

■ The clear import of Rule 215 is that an attorney may be employed for the debtor *only* by order of the court. The rule is very specific with respect to the contents of an application for the retention of counsel. It is sufficient to note that nowhere does Rule 215 provide that the application recite, or the retention order provide for, the rate or manner of compensation. Rather, it provides that compensation shall be in accordance with Rule 219 which, for its part, expressly prohibits the sharing of compensation among attorneys of different law firms except to reflect the actual contribution of services for which compensation is permitted.

Upon settlement of the disputes surrounding the government contracts in 1979 which, as previously mentioned, provided the lion's share of the debtor's estate, I&R applied to the court for compensation. The application requested that compensation be fixed in accordance with the contingent-fee provision contained in the Israel affidavit which was, ostensibly, irrevocably incorporated into Judge Herzog's order of March 11th.

The I&R application was initially opposed by the debtor, as well as by the Creditors' Committee, on the ground that a contingent-fee arrangement was inappropriate. The court, per Lesser, J., also expressed its reservations about the permissibility of such a fee arrangement in a Bankruptcy proceeding as it had previously done. Indeed, Judge Lesser had alerted the parties of his reservations about such a fee arrangement at least as early as April, 1976. To be sure, between April, 1976 and February, 1979, the court repeated its position with respect to the arrangement: that unless irrevocably committed as a matter of law to authorize payment to I&R in accordance with Judge Herzog's March order, the court intended to fix compensation in accordance with the standards and procedures prescribed in Rule 219.

At this juncture in the proceedings the only issue concerning I&R's fee, and the only objection lodged with respect thereto, concerned the contingent-fee provision. The question was whether Judge Herzog's order mandated that I&R recover a contingent fee or was the firm entitled only to a reasonable fee as computed under Rule 219.

Pursuant to Judge Lesser's direction, I&R submitted an affidavit entitled "Statement of Services Rendered by Special Counsel." This statement revealed, for the first time, that I&R had paid AN&B fees in excess of $60,000—approximately ⅓ of the amount which had been paid to I&R as interim fees. These fees were allegedly for local work done by AN&B and were paid in response to periodic bills submitted to I&R by AN&B.

There is no question that I&R's previous payments to AN&B had never been revealed to the court prior to April, 1979. Nor had the court been apprised of the contents of the second retainer agreement between AN&B and I&R. This is true despite the numerous hearings and conferences held in the instant proceeding and the serious questions raised by the court with respect to the contingent fee arrangement. Certainly there were numerous opportunities at which these payments and the retainer agreement could have properly been revealed.

At any rate, in light of these factual revelations in April, 1979, the debtor, through its new counsel, Finley Kumble, promptly moved to deny all compensation to both I&R and AN&B on the ground that the two law firms had engaged in fee splitting. The Creditors' Committee joined in the motion.

At this juncture in the proceeding, the question was no longer the permissibility of a contingent-fee arrangement but rather, whether the two law firms had engaged in fee splitting in violation of Rule 219. Of course, still underlying this issue was the question of what binding effect, if any, did Judge Herzog's March 11th order have with respect to the compensation of I&R. Stated differently, and as urged by AN&B and I&R, did the March 11th order of Judge Herzog vest certain rights in I&R as to the fact and manner of its compensation in the instant bankruptcy proceeding so as to preclude any subsequent modification thereof?

A review of the record, as well as the applicable law, reveals that the March 11th order did not create any rights in I&R, or AN&B, with respect either to the fact or manner of compensation. Moreover, the record more than supports Judge Lesser's finding of an impermissible fee splitting arrangement.

There is no dispute that AN&B was properly retained as counsel for the debtor. Indeed, Judge Lesser expressly found that AN&B was properly retained. And, despite the failure of full disclosure in connection with the retention of I&R, in violation of Rule 215, the fact of I&R's retention as special counsel was approved by Judge Lesser. The threshold question, therefore, is whether the retention application of I&R properly included a contingent-fee arrangement and whether the retention order, concededly prepared by I&R, properly incorporated this fee arrangement.

On appeal I&R urges, as it did below, that the fact and manner of their compensation vested at least as of February 16, 1979, and Judge Herzog's March 11th order "could not be modified or changed by Judge Lesser thereafter." More particularly, I&R urges that since on February 16, 1979, Judge Lesser approved the settlement agreement between the debtor and the United States Government with respect to the government contracts, yielding a recovery for the debtor of $17,000,000, I&R fully

performed the mandate contained in Judge Herzog's order and was entitled to compensation as set forth therein.

■ It is true that a Bankruptcy Judge may reconsider his prior order, and upon reconsideration either vacate or modify it, only if intervening rights will not be prejudiced. *See Wayne United Gas Co. v. Owens-Illinois Glass Co.*, 300 U.S. 131, 137–38, 57 S.Ct. 382, 385–86, 81 L.Ed. 557 (1936); *In re Texlon Corp.*, 596 F.2d 1092, 1100–01 (2d Cir. 1979). However, to preclude reconsideration, the intervening rights must be clearly established and the resulting prejudice substantial. Indeed, in *Texlon*, the court found that while reconsideration is permissible only if, upon reconsideration, the court is able to reestablish the rights of the opposing party as they stood when the original order was signed, "it cannot be necessary for reconsideration that the court should be able to place a losing party in the same position as if there had been none." *Texlon, supra*, at 1101.

■ Thus, it is not every readjustment of positions which will bar reconsideration of a bankruptcy order. Rather, only when the readjustment is substantial will the intervening rights be so prejudiced as to bar reconsideration. Applying these principles to the case at bar, it is evident that reconsideration of Judge Herzog's order was well within the discretion of Judge Lesser and that his discretion was properly exercised.

■ Turning first to the question of the "vested rights" of I&R, despite the court's approval of the settlement of the government contracts, no right of compensation vested in I&R. It has long been an accepted principle that final compensation of counsel in a bankruptcy proceeding is subject to the approval of the Bankruptcy court. *See, e. g.*, Bankruptcy Rule 219; *The Official Creditors' Committee of Fox Markets, Inc. v. Ely*, 337 F.2d 461 (9th Cir. 1964), *cert. denied*, 380 U.S. 978, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965).[1] And, when an

---

1. The Advisory Committee's Note to Rule 219 is instructive in this regard. The Note provides that

[t]he premise for including in these rules provisions governing the allowance of compen-

application for fees is made, it is to be on notice to the creditors or, at the very least, to the Creditors' Committee, in order that any objections to the application may be lodged and to insure that the fee ultimately approved by the court is a reasonable one. *See* Bankruptcy Rule 11–24(a)(7).

■ If, as I&R urges, the March 11th order of Judge Herzog was a self executing order with respect to attorney's fees, it was procedurally defective in that it was granted *ex parte*. Thus, the order, insofar as it purports to set compensation, was procedurally defective, *ab initio*, and could not vest any rights in I&R.[2]

In addition, the court, as early as April, 1976, and numerous times thereafter, expressed its reservations about a contingent-fee arrangement in a Chapter XI proceeding. Accordingly, I&R had actual notice of the court's reservations, as well as the court's position that unless otherwise bound by the March 11th order, it intended to fix I&R's compensation in accordance with the actual efforts expended by the firm. And yet, I&R continued to act as special counsel for the debtor from April, 1976 through February, 1979.

Under these circumstances it would be unreasonable for I&R to conclude that their contingent-fee arrangement was irrevocable. Indeed, the firm was certainly aware, or may be charged with knowledge, of the procedures to be followed in filing a fee application. Likewise, I&R was at least aware that its contingent-fee arrangement was subject to final approval by the court.

Even assuming that I&R's rights in the contingent-fee arrangement vested in February, 1979, the firm would not suffer substantial prejudice if compelled to accept a

reasonable fee as computed under Rule 219. To be sure, the firm would be reimbursed for all legitimate expenses as well as reasonable compensation for all legal and para-legal efforts expended by it in connection with the settlement of the government contracts in issue.

It is crucial to remember that when Judge Lesser initially decided to reconsider the March 11th order of Judge Herzog, the sole question was whether I&R would be compensated on the basis of the contingent fee arrangement purportedly incorporated into that order or on a time-spent basis. There was no doubt, at least at that juncture, that I&R was entitled to receive a reasonable fee, including a reasonable profit, for its efforts on behalf of the debtor. Thus, the only prejudice to be suffered by I&R upon reconsideration and modification of Judge Herzog's order was that its fee was to be computed based upon the actual efforts expended for the debtor rather than as a percentage of the settlement fund. While this would tend to reduce I&R's fee given the size of the settlement fee vis-a-vis the actual time spent on the settlement by the firm, I&R was entitled to recover a reasonable fee. Accordingly, the court was able to reestablish the rights of the losing party without a major readjustment of I&R's position. *Texlon, supra,* 596 F.2d at 1101.

Furthermore, as noted above, I&R knew that this manner of compensation was preferred by the court at least as early as April, 1976. However, the bulk of services rendered to the debtor were rendered after April, 1976, and before any rights vested in February, 1979, with full knowledge of the

---

sation to officers, attorneys, and accountants is that it is peculiarly a judicial responsibility to supervise the administration of estates and in particular to assure that allowances for compensation to those rendering services in connection therewith are fair but not excessive.

Clearly, in order that the spirit of Rule 219 is followed, it is crucial that the court be apprised of all fee arrangements that may exist between counsel. This, of course, was not done in the case at bar.

2. In addition to the failure to provide notice to the other parties in the proceeding, the application for the retention was not prepared by the debtor, as required under Bankruptcy Rule 215, but rather was prepared by AN&B. No affidavit of a Futuronics representative was submitted in connection with the application. For this reason also, the retention agreement is not only procedurally defective but also suspect.

court's position. Thus, it would appear that I&R assumed the risk that it would be compensated in accordance with Rule 219 rather than on a contingent-fee basis.

 In addition, quite apart from the general doctrine of when a Bankruptcy court may reexamine a prior order, Rule 60(b) of the Federal Rules of Civil Procedure provides ample authority for the subsequent amendment of Judge Herzog's March 11th order. Rule 60(b), applicable in bankruptcy proceedings, *Texlon, supra,* 596 F.2d at 1100, provides that relief from an order is available where fraud, misrepresentation or misconduct was involved in the procurement of the order. And, while Rule 60(b) provides certain time limits within which a request for relief must be made, these time restrictions are inapplicable in a Bankruptcy proceeding. 7 Moore's Federal Practice ¶ 60.18[7], at 213–14 (2d ed. 1979). Rather, the order may be reexamined at any time providing no intervening rights will be prejudiced. *Id.*

 Finally, inasmuch as an order fixing compensation may be construed as an administrative order, it is subject to review at any time during the course of the bankruptcy proceeding if no intervening rights will be prejudiced.

Since it is evident that modification of Judge Herzog's order did not prejudice any intervening rights of I&R, if indeed such rights ever arose, either Rule 60(b) or the reviewability of administrative orders is sufficient to support the reexamination in issue.

 I turn next to consider Judge Lesser's finding that AN&B and I&R violated Rules 215 and 219 of the Bankruptcy Rules.

Without unduly burdening an already tortured record, it is quite apparent that Judge Lesser's finding that AN&B and I&R violated the prohibition against fee splitting was more than supported by the credible evidence. Suffice it to say that despite the numerous applications of I&R for interim fees between December, 1976 through February, 1979, it never once disclosed, directly or indirectly, that it had paid approximately ⅓ of all these interim fees to AN&B. This is true despite the fact that at one conference called for the specific purpose of discussing I&R's contingent fee arrangement, the court expressed its opinion that the arrangement was improper and that I&R had already been compensated for substantially all the time it had expended in settlement of the government contracts. And yet, I&R never uttered one word to the effect that its time had not been compensated because of its payments to the AN&B firm of approximately ⅓ of all its fees.

Nor did AN&B, in urging the approval of the I&R interim fee applications, ever reveal, in sum or substance, that it had received compensation from I&R.

 The sole question remaining is the sanctions to be imposed for these alleged violations. Judge Lesser, although thoroughly offended by the conduct of AN&B and I&R, was favorably impressed by the fact that this was a successful proceeding. Indeed, it appears likely that the debtor's plan, when finally submitted, will provide that general creditors receive 100 percent of their claims.

In light of the successful nature of the instant bankruptcy proceeding, Judge Lesser found that both AN&B and I&R were entitled to a reasonable fee despite their abysmal conduct in connection therewith. He adjusted their fees as follows:

(1) AN&B was directed to return the $60,067.37 paid to them by I&R, with interest, to Futuronics. The firm was, however, permitted to retain $36,635 for the 470 hours of professional services it rendered to Futuronics;

(2) Compensation for I&R for the 6,400 hours of professional services rendered to Futuronics was fixed at an hourly rate of $100. In addition to this sum of $650,000, Judge Lesser, absent any Rule 219 problems, would have added a "bonus" of $400,-000 for a grand total of $1,040,000. However, under the circumstances, Judge Lesser felt such a sizable bonus would be inappropriate and therefore reduced the bonus to $210,000. Thus, I&R's total fee for its work in the proceeding amounted to $850,000.

Under the circumstances, I find that Judge Lesser was far too lenient in fixing the fees for AN&B and I&R. We are dealing here with a case in which two law firms engaged in a fee splitting arrangement in flagrant disregard of the Bankruptcy Rules. In addition, both firms intentionally kept the court in the dark about this arrangement for four years despite the numerous opportunities at which point the arrangement could have been revealed. It was only when a detailed statement of services was requested by the court that the fee splitting was revealed. I have no doubt that had the original contingent-fee arrangement been approved by Judge Lesser, the parties would never have revealed the fee splitting arrangement.

Moreover, once faced with this serious situation, both firms pled ignorance of the Bankruptcy Rules and attempted to place the blame for these violations upon the debtor's shoulders. I find these to be particularly ill chosen tactics given the abundant evidence contained in the record demonstrating AN&B and I&R's legal expertise which was flaunted in the retention applications.

I find, as did Judge Lesser, that the conduct of AN&B and I&R was totally unprofessional and in breach of their respective duties as fiduciaries and officers of the court. As such, it is simply inexcusable.

Moreover, it is evident from the extensive record before me that these breaches were not momentary lapses in an otherwise unblemished performance. Rather, the conduct of both firms evinces "a total pattern of conduct which betrays a callous disregard of the professional obligations undertaken in these bankruptcy [proceeding]." *Arlan's Department Stores, Inc., supra,* at 943. Under such circumstances, a Judge would indeed be remiss if he were to permit a law firm guilty of such conduct to be compensated. *Id.* at 944.

In addition, despite the serious nature of these breaches of their professional obligations, both law firms have demonstrated, in the Bankruptcy court as well as on appeal before this court, a cavalier attitude toward these breaches, labeling them "technical breaches" at best.[3]

Based upon the specific findings of misconduct made by Judge Lesser below, which were fully substantiated in the record, I find that it was an abuse of discretion to permit either AN&B or I&R to recover any fees in connection with the instant proceeding. *Arlan's Department Stores, Inc., supra,* at 944.

Accordingly, Judge Lesser's opinion, dated September 28, 1979, is affirmed with respect to the vacation of the compensation portion of Judge Herzog's March 11th order and the findings of misconduct on the part

---

**3.** The evils of fee splitting are not so easily dismissed, however, as the Advisory Committee's Note to Rule 219 indicates:

> As Chief Justice Taft pointed out in *Weil v. Neary,* [22 F.2d 893 (1928) certiorari granted 276 U.S. 613, 48 S.Ct. 338, 72 L.Ed. 732, reversed,] [, 278 U.S. 160, 173, 49 S.Ct. 144, 149] [, 73 L.Ed. 243] (1929), arrangements for division of compensation are contrary to public policy not only because of 'actual evil results but their tendency to evil in other cases.'
>
> 'Any division of fees or other compensation represents, above all, an incentive for the applicant to claim a compensation high enough to make his own share in it a worthwhile remuneration. It thereby tends toward extravagance of expenditure. Another evil is that it subjects the officer or attorney entitled to compensation to outside influences, over which the court, has no control and which may affect the administration by de-

> priving the court's functionaries of their requisite independence of judgment. Finally, it results in a clear transfer of judicial power over expenditure and allowances from the court to persons who, at best, have a distinctly lesser degree of public responsibilities.' 3A Collier 1637 (1961).

Given this strong public policy against fee splitting, and the dangers likely to result, it is not the type of violation that courts should be quick to overlook. While I am convinced from the record that Judge Lesser was appropriately offended by the "bald fee-splitting agreement" between AN&B and I&R, I find that the sanctions he imposed were overly lenient. Indeed, the awarding of a bonus under such circumstances is totally inappropriate. And, while some may disagree upon whether all compensation should be denied, I am convinced that given the conduct involved herein this is the only appropriate sanction to be imposed.

of AN&B and I&R, and is reversed insofar as it permitted AN&B and I&R to retain any fees for services rendered to the debtor. Thus, AN&B and I&R are directed to pay to Futuronics all fees collected to date, with interest, and are denied any further compensation.

So ordered.