In re **FIDELITY MORTGAGE INVESTORS, Debtor.**

**LIFETIME COMMUNITIES, INC., (formerly known as Fidelity Mortgage Investors), Appellant,**

v.

**WEIL, GOTSHAL & MANGES, Appellee.**

**No. 81 Civ. 1261.**

United States District Court, S. D. New York.

July 7, 1981.

Levy & Erens, Chicago, Ill., Kenneth Singer, Vice President/General Counsel, Jacksonville, Fla., Lumbard & Phelan, New York City, for appellant Lifetime Communities Inc.; Theodore L. Freedman, James M. Lawniczak, Chicago, Ill., Eliot Lumbard, New York City, of counsel.

Weil, Gotshal & Manges, New York City, pro se.

## OPINION

EDWARD WEINFELD, District Judge.

This is an appeal by Fidelity Mortgage Investors, debtor in possession ("Debtor"), now Lifetime Communities, Inc., from an order of Bankruptcy Judge Roy Babitt which granted an application of Weil, Gotshal & Manges ("Weil Gotshal" or "petitioner") the Debtor's attorneys, made after their fees as attorneys for Debtor had been determined, awarding interest thereon from the date when the Debtor had deposited funds pursuant to an approved Plan of Arrangement to the date such compensation was paid to the attorneys—a period of 11 months.

This Court is of the view that the order directing the payment of such interest is contrary to the terms of the Plan, disregards the fact that any ambiguity in the Plan with respect to who is entitled to interest must be resolved against Weil Gotshal, who drew the plan, and that equitable considerations which militate against the attorneys' claim require a different result from that reached by the learned Bankruptcy Judge. Accordingly, the order is reversed.

In January 1975, Debtor commenced this voluntary Chapter XI proceeding, and from its inception, Weil Gotshal represented it.[1] In November 1977, Debtor proposed an Amended Plan which subsequently was accepted by its creditors. Weil Gotshal drafted the Amended Plan and all pertinent and implementing documents. As a condition precedent to the confirmation of the Plan, Fidelity was required to deposit monies for the payment of initial distributions, costs and expenses of administration, payments to priority and other creditors of various classes as provided for under the Plan (the "Deposit"). $13,750,000 was the sum estimated to meet the required payments. On December 28, 1977, in anticipation of the confirmation of the Plan, a "Disbursing Account Order" was entered appointing a disbursing agent (the "Disbursing Agent") who was required to invest the Deposit in interest-bearing accounts and certificates pending distribution of payments. The Dis-

---

1. The parties agree that this case is governed by the 1898 Bankruptcy Act, which was repealed effective October 1, 1979 by the Bankruptcy Reform Act, Pub.L.No.95–598, 92 Stat. 2549.

bursing Order contained a provision that "all interest earned on such deposits or certificates shall accrue to the benefit of the debtor," except as otherwise provided in the Plan.

On January 4, 1978, Bankruptcy Judge Lesser, before whom the matter was then pending, confirmed the Plan. The same day the $13,750,000, the condition precedent to the confirmation of the Plan, was deposited. Paragraph 7 of the Order of Confirmation provides, "[u]pon determination that there is on deposit with the Disbursing Agent monies in excess of the amounts required to complete the disbursements pursuant to the Plan, such excess monies shall be paid to [Fidelity Mortgage Investors]."

Also pertinent to the instant matter is Paragraph 5 of the Order which provides "[t]he Disbursing Agent be, and he hereby is, directed to withhold distribution of any monies to the persons whose claims are set forth in the Distribution Schedules as costs and expenses of administration, pending further orders of the court fixing the precise amount payable to each such person." The Distribution Schedules, in addition to items listed by other administrative claimants, set forth $985,000 as the amount requested by Weil Gotshal for their services to the Debtor.

On February 21, 1978, Weil Gotshal applied to Bankruptcy Judge Lesser for fees and disbursements in the sum of $1,089,-322.82, less $93,746.97 previously paid, which was somewhat higher than the sum set forth in the Distribution Schedules. Upon an explanation by Weil Gotshal that this was due to a purported miscalculation, the Debtor offered no objection to the requested allowances; however, some creditors did oppose, claiming that the fees requested were excessive and also duplicated charges for services rendered by Debtor's prepetition counsel, Milan & Wilbur, who also had applied for allowances of fees. The objectants were granted an opportunity to examine the time sheets of both attor-

neys, which were made available for inspection in March and April 1978. The objectants thereafter advised the Bankruptcy Judge they were of the view that the time spent by both firms was excessive and duplicative. Needless to say the applicants challenged this and emphasized that the Debtor did not object to the allowances as requested.

On December 4, 1978, the Weil Gotshal application was granted by Bankruptcy Judge Lesser. An order was then entered awarding counsel fees to them in the aggregate sum of $1,044,247.82 less the sum of $93,746.19 previously paid, or a net sum of $950,501.63. The amount allowed for fees was $45,000 less than requested. Shortly thereafter, about December 18, 1978, payment as directed was made to the attorneys. Within a few days, on December 21, 1978, Weil Gotshal applied for an order directing that they be paid the interest earned on the $950,501.63 from January 14, 1978, the date of Deposit and confirmation of the Plan, to the date of payment of their fees. The Debtor, who previously had no notice that any such application would be made, opposed the payment of interest as did a creditor, Chase Manhattan Bank N.A. ("Chase"), and a majority of the members of the Creditors Committee, who contended that the interest belonged to the Debtor.

The matter was heard by Bankruptcy Judge Lesser on January 31, 1979 following which the parties submitted letters setting forth their opposing contentions. However, he did not decide the matter; he resigned effective September 30, 1979 and the proceeding was delayed because of the lack of immediate designation of his successor and some confusion with respect thereto.[2] The matter eventually was assigned to Bankruptcy Judge Roy Babitt. After hearing the parties on November 25, 1980, Bankruptcy Judge Babitt granted the Weil Gotshal application and entered an order on December 19, 1980 that authorized a $90,000 payment of interest on January 14, 1981

---

**2.** Weil Gotshal "was under the impression that the case had been referred to Bankruptcy

Judge Lifland." Letter of August 14, 1980.

plus interest from December 19, 1980, the date of his order, through January 14, 1981 at the rate of 19.5% per year.[3] The Disbursing Agent made the payment to the attorneys, and Lifetime Communities, Inc., as successor to the Debtor, appeals from the order and seeks the return of the interest so paid.

Weil Gotshal's claim for interest upon the amount of fees allowed to them is based upon a contention that the $985,000 set forth in the Distribution Schedule and included in the Deposit of $13,750,000, as stated by them, was "reserved for [their] benefit" and that the monies "held by the Disbursing Agent represented funds in which [Weil Gotshal] possessed a *vested interest* subject only to the court fixing the precise amount of the compensation and reimbursement of our-of-pocket [sic] expenses to" them.[4] They urge that the compensation awarded to them by the Bankruptcy Court related back to the time that the monies were deposited by the Debtor on January 4, 1978.

If this contention of "vesting" is correct, then every claimant listed on the Distribution Schedules who applied for and was allowed administrative compensation by the Bankruptcy Court likewise was entitled to interest upon such amounts from the date of confirmation to the Plan to the date of payment. I am of the view that the unascertained amounts did not vest until they were specifically determined in a fixed amount by the Bankruptcy Judge. The administrative claims were expressly deferred under the Plan and no payment was to be made pending the "further orders of the court fixing the precise amount payable to each such person."

A priority claimant for administrative services, whether legal, accounting or appraisal, estimates the value of those services which is subject to challenge by the Debtor or interested creditors. The ultimate decision is made by the Bankruptcy Judge. Indeed, there are circumstances, not here present, when the Bankruptcy Court would be justified in rejecting a claim in its entirety even though services were in fact rendered.[5] It is only when the Bankruptcy Judge determines the precise amount that a claimant is entitled to payment. Only then was Weil Gotshal in a position to assert that its claim had vested or that it had "an immediate right of present enjoyment, or a present fixed right of future enjoyment."[6] The fact that an estimated sum was listed or requested in the Distribution Schedules did not give the attorneys or any other administrative claimant the immediate right to the amounts set forth therein. Their rights accrued only when the Bankruptcy Judge made the determination as to what sum represented fair and reasonable compensation for such services. It is from that date that interest could properly be claimed unless the Plan itself requires a different result and which we now consider.

In effect, however worded, Weil Gotshal is seeking interest upon its award from the date of Deposit to the date of payment. At the outset it is noted that neither the Amended Plan, the Disbursing Order nor any other document drawn by the attorneys with respect to the Plan contains any provision for the payment of interest to administrative claimants. In addition to the absence of any such specific provision, no sin-

---

3. Weil Gotshal asserts that the amount of interest, the date of payment and the rate of interest to date of payment was agreed upon at a hearing as a matter of convenience to Debtor, which held the funds in time certificates of deposit.

4. Application for Order Directing Payment of Moneys Earned, Dec. 21, 1978, ¶ 7 (emphasis supplied).

5. *In re Arlan's Dep't Stores, Inc.,* 615 F.2d 925, 943 (2d Cir. 1979) (court has inherent power to deny fees where serious breaches of fiduciary obligations occur); *In re Orbit Liquor Store,* 439 F.2d 1351 (5th Cir. 1971) (Wisdom, J.) (not compensable if unauthorized or duplicative); *Carey v. Selected Investments Corp.,* 319 F.2d 578 (10th Cir. 1963) (fees disallowed where attorney had conflict of interest); *In re Rothman,* 85 F.2d 51 (2d Cir. 1936).

6. *Pearsall v. Great Northern R. Co.,* 161 U.S. 646, 673, 16 S.Ct. 705, 713, 40 L.Ed. 838 (1896) (quoting Chancellor Kent).

gle provision contains language that permits any inference justifying the payment of interest to administrative claimants. Indeed, to the contrary, the affidavit in support of the order appointing the Disbursing Agent requested that the Deposit be invested in interest-bearing certificates and savings accounts "for such periods of time as may be required to maximize the estate's interest income on such funds during such periods, consistent with the scheduled distributions provided for in the Plan." [7]

It must also be emphasized that every document pertinent to the interest claim now advanced by Weil Gotshal was drawn by them in their capacity as attorneys for the Debtor. Thus their demand for payment of interest on allowed compensation places them in conflict with the interests of their client. These experienced attorneys were aware that the listing of their request for an allowance of fees as stated in the Distribution Schedules did not mandate automatic payment thereof. They were aware that they, as well as other administrative fee claimants, were required to apply for the fixation of their fees by the court and that the funds included under the Plan were to be withheld "pending further orders of the court fixing the precise amount payable to each such person." They also were aware that consideration of fee applications is not pro forma and is subject to court scrutiny, that the Debtor as well as other parties had a right to object thereto, and even in the absence of objections by any party, there is often some delay in passing upon the respective claims for allowances. Those claims could be evaluated only upon affidavits justifying the requested payments. Indeed, the attorneys themselves did not present their application for allowances until forty-seven days after the confirmation of the plan.

Under the circumstances, if Weil Gotshal, knowing of the likelihood of delay in determination of fee applications, had any purpose or intent to seek interest, they were duty bound to advise the client with respect thereto since the client's interests were adversely affected not only with respect to its attorneys' claim for interest but also by those that might be asserted by any other administrative claimant. And, of course, if the client had agreed, the Plan could specifically have made provision for the payment of interest. The simple fact is that the provision for payment of administrative and other priority claims is silent and no other provision in any other document implementing or related to the Plan contains any reference authorizing the payment of interest from the date of Deposit to the date of payment. Moreover, other Sections of the Plan involving other classes of creditors require the payment of interest; the record indicates that each provision for interest was intensively negotiated.

While this Court is satisfied that the absence of any specific provision in the administrative expense clause or in any other document for the payment of interest on such claims forecloses such payment, any ambiguity that might exist must be resolved against the draftsmen of the documents, Weil Gotshal. The Amended Plan is a "highly complex and lengthy document . . . which [does not fit] within the present day ideal to eliminate 'legalese.'" [8] It has many provisions applying to creditors of different classes, priority and administrative claimants. Apart from Weil Gotshal's duty to its client, which surely needs no amplification here, I would apply the same rule of construction that is applied against insurance companies with respect to ambiguities in policies of insurance—most favorably to the client and most strictly against their lawyer-draftsman. [9]

---

7. Application for Order dated December 28, 1977.

8. Application for Fees, at 79.

9. *Vargas v. Insurance Co. of N. Amer.*, 651 F.2d 838 at 839–840 (2d Cir. 1981); *Filor, Bullard*

& *Smyth v. Insurance Co. of N. Amer.*, 605 F.2d 598, 602 (2d Cir. 1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1506, 59 L.Ed.2d 776 (1979); *Index Fund, Inc. v. Insurance Co. of N. Amer.*, 580 F.2d 1158, 1162 (2d Cir. 1978), *cert. denied,* 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461

■ I am further of the view that considerations of fairness and equity require the return of the interest to the Debtor or its successor. In its petition for allowances filed on February 21, 1978, Weil Gotshal did not indicate nor request interest on whatever sum the Bankruptcy Judge might finally allow. Although their petition sought more than was listed in the Distribution Schedules, the Debtor, satisfied with their explanation for the increase, offered no objection to the requested allowance. As far as the Debtor was concerned, that sum could have been granted forthwith by the Bankruptcy Judge if he was of the view that it was fair and reasonable. However, creditors, as was their right, did object upon a claim of excessive and duplicative services by Weil Gotshal and another law firm. Had Weil Gotshal indicated in their petition or otherwise that they intended to apply for interest on any sum from the date of confirmation and Deposit to the date of the award of fees, they should have made this known to the Debtor who then would have been in a position to reassess its acquiescence to the payment of the amount requested. The failure of Weil Gotshal to make known their purpose to request interest, in a sense lulled Debtor into non-opposition to their claim for services. The amount allowed by the Bankruptcy Judge to Weil Gotshal was paid promptly and, almost simultaneously therewith, the application for the interest was made—the first notice to Debtor of any such claim.

■ Weil Gotshal urges that equitable considerations justify the payment of interest to it and not to the Debtor, because the proceedings extended over a period of time and it waited eleven months until its fee application was granted and the order entered directing payment. As to delay while the attorneys' application was sub judice

before Bankruptcy Judge Lesser, in no respect can this be attributed to the Debtor. As already noted, Weil Gotshal itself was responsible for a 47-day delay in the presentation of its application. Further delay was due to the creditors' objections to their application and the time required to examine the time sheets of Weil Gotshal and those of the other law firm representing the Debtor. Finally, time was consumed while the matter was sub judice before Bankruptcy Judge Lesser, who did not render his decision until December 4, 1978, slightly over nine months after the application was made. It is not uncommon that fee applications are not acted upon promptly particularly in those instances where objections are filed and discovery and even hearings are required.[10] Moreover, if Weil Gotshal was of the view that there was undue delay by the Bankruptcy Judge in the determination of their application, they were in a position upon appropriate grounds to move for an expedited disposition. This was their responsibility and not their client's. There is no reason, whatever the cause for delay, to penalize the client by requiring it to pay interest upon its own deposit of funds to the attorneys for the amount allowed for services. The net effect of the order entered below is to increase the compensation allowed attorneys by almost $100,000.[11] To this extent it is contrary to the order of the Bankruptcy Judge who fixed the amount of compensation to which the attorneys were entitled.

It is a known fact that Chapter XI proceedings, depending upon their size, complexity, and the number of claims and creditors, require substantial time before a Plan may receive final acceptance. Similarly, delay in considering petitions by attorneys for fees is not unusual. This delay does not thereby entitle interested persons, particularly administrative claimants such as debtor's attorneys who frequently control the

(1979); *Lachs v. Fidelity & Cas. Co. of New York*, 306 N.Y. 357, 118 N.E.2d 555 (1954).

**10.** *Cf. City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 468 (2d Cir. 1974).

**11.** Petitioner's application in support of the requested allowance urged that the Bankruptcy

Judge "should take into account the fact that the applicant literally has been required to finance the Chapter XI case for a period of over 3 years," during which it received payments totalling $90,075 and urged this as a "factor which the Court should consider in any award of compensation to be made in this case." Application for Fees, at 96.

direction and progress of proceedings, to interest upon amounts finally awarded them. To grant interest, whether from the date of inception of proceedings or from the time applications for allowances are made, absent specific legislative authority, would in effect amount to judicial legislation.[12]

It is significant that when certain claims were expunged or disallowed, the principal amounts covering the claim, plus interest on the *entire* deposit, was ordered returned to the Debtor.[13] This fact, a practical application of a provision in the contract relative to interest, abundantly establishes that the interest earned on the Deposit was for the exclusive benefit and use of the Debtor, except where expressly otherwise provided. Here, too, Weil Gotshal drafted the order and the petition supporting it.

Weil Gotshal relies on and stresses *In re United Merchants & Manufacturers, Inc.; Vertical Industrial Park Associates v. United Merchants & Manufacturers, Inc.*,[14] which the Bankruptcy Judge viewed as compelling his decision. The Debtor seeks to distinguish the case. I regard it as inapposite. This case is to be governed by the controlling documents referred to herein and not those which served as the basis of the ruling in *United*. A fair reading of that opinion makes it crystal clear that the determination of the interest question *vis-a-vis* creditors, turned on specific provisions in the plan; indeed, the *per curiam* opinion emphasized at the very start that its determination "turns solely on the interpretation of Article III, C9 of UM&M's Plan of Arrangement." So, too, this case turns on the Plan and other documents, except here it centers on the *absence* of a specific provision for the payment of interest on administrative claims that were subject to judicial determination. Moreover, if as Weil Gotshal presses, the Court of Appeals in *United Merchants* firmly established a governing

principle that interest on monies earned on deposits for the purpose of assuring the payment of creditors' allowed claims is payable to creditors based upon "considerations of fairness and equity,"[15] then upon the facts here presented, as already indicated, I hold that such considerations of fairness and equity favor the client and not the lawyers.

The order of the Bankruptcy Judge is reversed and Weil Gotshal is directed to return the funds it received from the Disbursing Agent.

So ordered.

---

12. *Cf. Rosewell v. LaSalle National Bank,* —— U.S. ——, —— ——, 101 S.Ct. 1221, 1230–33, 67 L.Ed.2d 464 (1981) (two-year delay without interest).

13. Order Disallowing and Expunging Claims, July 25, 1978. The Order provided for the

return of "interest on all funds deposited with the Disbursing Agent by [the Debtor]."

