In re HOFFMAN et al.

(District Court, E. D. Wisconsin. October 18, 1909.)

1. BANKRUPTCY (§ 228*)—REVIEW OF DECISION OF REFEREE—FINDINGS OF FACT.
   The finding of a referee in bankruptcy on an issue of fact is entitled to great weight, and should not be set aside unless clearly erroneous.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. § 228.*]

2. BANKRUPTCY (§ 272*)—FEES OF ATTORNEYS—ATTORNEYS IN SUIT BY TRUSTEE.
   The decision of a referee that a former allowance of $1.500 to the attorneys for a trustee in bankruptcy for services rendered in a proceeding against the wife of a bankrupt to recover a sum fraudulently secured from the estate was sufficiently affirmed, where the litigation was expensive to the estate and resulted in no benefit to it; but a claim for actual disbursements *held* improperly disallowed.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 573; Dec. Dig. § 272.*]

In Bankruptcy. In the matter of Herman Hoffman and Sigmund Engel, bankrupts. Heard on review of order of referee. Modified and affirmed.

This is a proceeding to review the order of the referee disallowing a claim for $1,000 additional attorney's fees, and $202.96 for disbursements actually advanced by such attorneys in the conduct of the case.. The claimants were attorneys for the trustee. The adjudication took place on the 20th of November 1906. The assets of the estate had been converted into money by virtue of a sale made by the receiver, and the estate was practically ready for settlement when an examination of the books of the bankrupt aroused a suspicion of fraud. Further investigation strengthened the theory that Sarah, the wife of one of the bankrupts, had appropriated and made away with a large sum of money that belonged to the estate. At the first meeting the creditors were keen for a fight to uncover the fraud. Thereupon proceedings were vigorously begun for an examination of all parties concerned. Volumes of testimony were taken, and large expenses incurred. In May, 1907, the former referee allowed the claimants $1,500 on account of attorney's fees. The referee decided against the trustee on the merits, and held that no sufficient case had been made out to establish spoliation. An appeal was taken to the District Court, which reversed the referee, and found that Sarah Hoffman had appropriated some $6,000 of the assets of the estate. Whereupon an order was made directing her to pay over such sum. An appeal was then taken by the bankrupt to the Circuit Court of Appeals, which appeal was dismissed on technical grounds. After all this litigation, the attorneys for the trustee, not discovering any way to enforce the order of the court, or to obtain any efficient remedy, again called the creditors together and advised them that it was very doubtful whether any recovery could be made against Sarah Hoffman. Thereupon the creditors voted to discontinue the proceedings, and the same were accordingly dropped. No pecuniary benefit was derived by the estate from the litigation. Some of the larger creditors may have considered it, from their point of view, desirable to prevent a discharge of the bankrupts, for its moral influence on the trade; but, so far as the estate and the creditors at large were concerned, the litigation was fruitless. The referee disallowed the claim for additional compensation in toto. He found that the $202.96 had been actually paid by the attorneys for necessary disbursements of the litigation, and held that $1,500 already paid was under the circumstances a liberal allowance for all services and disbursements. To review this conclusion this proceeding is brought.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Bloodgood, Kemper & Bloodgood, for trustee.

QUARLES, District Judge (after stating the facts as above). It is perhaps the most delicate and difficult task that a judge has to perform to pass upon questions involving the compensation of counsel. That a large amount of professional work was done by the attorneys for the trustee there can be no doubt. Their energy and skill in uncovering a wretched fraud cannot be too highly commended. From a personal standpoint it would give me pleasure to allow them all they claim. But the referee, who has greater familiarity with the circumstances and with the record, has passed upon the issue of fact, and the court ought not to overrule such finding unless it clearly appears from the evidence that such ruling is erroneous. In cases of this kind the finding of the referee is entitled to great weight, and is not to be lightly set aside. Collier on Bankruptcy (7th Ed.) 504, and cases cited. An examination of these cases will show that the courts are inclined to hold the findings of the referee on issues of fact as conclusive as the report of a special master or the verdict of a jury. In re Royce Dry Goods Co. (D. C.) 133 Fed. 100, 103, the court well remarks:

"Any other rule would plague the court with sitting as in a trial de novo in the vast multitude of claims passed on by the referee. The burden of this work of review is becoming almost insupportable. It occupies much of the time of the court, with records of testimony running into hundreds of pages. It is so easy and inexpensive for defeated counsel to have the cases certified to the court for review that the per cent. of them is far in excess of the merits or importance of the questions involved."

The proposition upon which the referee seems to have based his opinion is that the litigation was not only fruitless, but exceedingly expensive to the estate. The referee was entirely right in treating the case as though this were an original application for an allowance of $2,500 for attorney's fees. The order of the former referee allowing $1,500 on account was not final or conclusive of any question here involved. The referee in his opinion says:

"I have carefully examined the records and files in this proceeding, and am of opinion that it would be a gross violation of my duty to administer bankrupt estates economically for me to allow any further attorney's fees in the matter; and it is my judgment that the $1,500 already received by counsel herein is more than a reasonable compensation for all their services and disbursements in said proceeding."

See, also, In re Simon (D. C.) 151 Fed. 507.

The referee evidently had in mind the fact that the estate had been put to enormous expenses by reason of the legal proceedings, aside from attorney's fees, and the record fully justifies the correctness of this conclusion. Large amounts were paid to expert accountants, stenographers, witnesses, and court officers. It is undoubtedly true that the success or failure of an attorney is an important factor to be considered in determining the value of his services. Success is the test applied by the business world in measuring compensation. It is largely so in the courts. As a rule, professional services, however able or prolonged, which yield no results, command no high reward. I would not hold that an attorney is to be held an insurer of results; but a is clearly incumbent upon him, before he launches an estate into a

tedious and expensive litigation, to look ahead and determine whether, in the event of success in the court, he will be able to secure any practical result.

This litigation involved the pursuit of a married woman, the wife of one of the bankrupts, who was suspected of having appropriated and concealed some $6,000 worth of assets. It was known at the outset that the woman had no tangible property upon which a writ could be levied, and there was every reason to anticipate that the money had passed beyond her control. It is suggested in the proofs that she fled beyond the jurisdiction; but just when she absconded does not appear. It should have been foreseen that the only way to enforce such an order against her was by proceeding for contempt, which was a precarious remedy. Counsel, in their zeal to uncover fraud, seem to have lost sight of this prudential consideration; and it was not until the end of this long litigation that any serious consideration seems to have been given to this aspect of the case. Thus three years were devoted to a bitter contest to secure an order which proved barren and practically worthless. Under these circumstances I do not feel warranted in disturbing the findings of the referee. It is impossible for me to make thorough examination of these volumes of testimony and lengthy proceedings. I must adopt the conclusion at which the referee arrived as to the additional claim for attorney's fees. That portion of the finding of the referee will be affirmed.

On the second branch of the case, involving disbursements of $202.-96, I can see no reason why counsel should not be repaid the money actually expended for proper disbursements. The certificate of the referee seems to cover the fact of the expenditure and the propriety of the outlay. In my judgment this should not be confused with the question of attorney's fees; and that portion of the finding of the referee disallowing said sum of $202.96 is reversed, and an order should be entered for the payment of such disbursements to the claimants.

The record will be returned to the learned referee for further proceedings in accordance with this opinion.