**In re NATIONAL FINANCE CORPORATION Bankrupt.**

**Bankruptcy No. 77–315.**

United States Bankruptcy Court, D. Rhode Island.

July 27, 1984.

## DECISION ON APPLICATIONS FOR FEES

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Several applications for compensation are before the Court in this "Old Act" case, which has been pending since August 24, 1977, when National Finance Corporation filed a Chapter XI petition.

The first paragraph of the petition states that the bankrupt company was "in the business of consumer loans." Many of the bankrupt's creditors are not typical business trade creditors, but elderly local people, subordinated debenture holders, who were expecting the return on their "investments" to carry them through their retirement years. To date, these creditors have received dividends of less than 32% of their claims, and, as is now apparent, will receive little more—contrary to optimistic representations of a probable 100% dividend originally made to them by the bankrupt's counsel at early creditors' meetings. This is therefore a particularly appropriate case in which to apply the "pivotal concepts" of "conservation of the estate and economy of administration" which apply in "assessing the question of compensation allowable under the Bankruptcy Act." 2 *Collier on Bankruptcy* ¶ 330.05[2][e] (15th ed. 1984) (under Old Act cases, "[c]ourts repeatedly admonished that principles of 'strictest economy' must govern compensation." *Id.* at ¶ 330.05[2][e] n. 31 (citations omitted)).[1]

The principal source of guidance for the Court in allowing compensation in Old Act cases is former Rule of Bankruptcy Procedure 219(c),[2] which provides in pertinent part as follows:

(c) *Factors in Allowing Compensation.*
(1) *General.* The compensation allowable by the court to a trustee, re-

ceiver, marshal, attorney, accountant, or other person entitled to compensation for services rendered in the administration of a bankrupt estate shall be reasonable, and in making allowances the court shall give due consideration to the *nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors.* (emphasis added)

Discussing these factors and their application by courts, Collier notes:

In determining the reasonable value of services rendered the following elements are to be considered: *"the time spent, the intricacy of the problems involved, the size of the estate, the opposition met, the results achieved,—all subject to the economical spirit of the Bankruptcy Act."* [quoting *In re Owl Drug Co.,* 16 F.Supp. 139, 142 (D.Nev.1936), *aff'd sub nom. Cohn v. Edler,* 90 F.2d 823 (9th Cir.1937)]. In view of the primary purpose of bankruptcy liquidation it is not surprising to find that, aside from the principle of economy, the *results achieved* constitute the factor of greatest determinative weight.

"Success is the test applied by the business world in measuring compensation. It is largely so in the courts. As a rule, professional services, however able or prolonged, which yield no results,

---

**1.** Chapter XI cases which continue after October 1, 1979, the effective date of the Bankruptcy Reform Act, "are governed by the terms of the now repealed Bankruptcy Act of 1898." *In re Aminex Corp.,* 15 B.R. 356, 359 n. 7 (Bankr.S.D. N.Y.1981). Section 403(a) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, provides as follows:

SEC. 403. (a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted. The Supreme Court noted that "[t]he language of § 403(a) is unequivocal." *Central Trust Co. v. Official Creditors' Committee,* 454 U.S. 354,

102 S.Ct. 695, 696, 70 L.Ed.2d 542 (1982) (per curiam). The Court also cited the legislative history of the Code in support of a literal reading of § 403(a): "The application of the new law will only be to new cases.... Cases commenced before October 1, [1979], will continue to be governed by the Bankruptcy Act, as in effect September 30, [1979]...." *Id.* 102 S.Ct. at 697 n. 1, *citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 287 (1977).

**2.** Former Rule of Bankruptcy Procedure 219(c) applies in this Old Act case, which is "unaffected by provisions of the new Bankruptcy Act." *Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.),* 639 F.2d 1197, 1201 (5th Cir.1981). The Advisory Committee Note to New Bankruptcy Rule 1001 specifies that "[t]hese rules apply to all cases filed under the Code except as otherwise specified." *See also* section 403(a) of Pub.L. 95–598, quoted in note 1 *supra.*

command no high reward." [quoting *In re Hoffman*, (D.C., Wis.), 23 Am.B.R. 19, 173 F. 234.] This implies that (1) great success and benefit to the estate commands a liberal compensation, and (2) all effort and labor may go virtually without reward where no benefit accrued to the estate. *Benefit to the estate* as a yardstick for measuring the value of attorneys' services has been recognized by the Supreme Court in *Randolph v. Scruggs* [190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903)].

3A *Collier on Bankruptcy* ¶ 62.12[5] (14th ed. 1975) (footnotes omitted) (emphasis in original).

Although the Court has considered the various factors outlined in *King v. Greenblatt*, 560 F.2d 1024, 1026–27 (1st Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), and the "lodestar" approach of *Furtado v. Bishop*, 635 F.2d 915 (1st Cir.1980),[3] we conclude that the results achieved, the size of the fees in relation to the size of (and benefit to) the estate,[4] the need for "conservation of the estate and the interests of creditors," Rule of Bankruptcy Procedure 219(c)(1), are the factors that weigh most heavily in this case.

Applicant Allan M. Shine, Esq., has previously been awarded fees in the following amounts:

| | | | |
|---|---|---|---|
| June 1, 1978 | Disbursing Agent | $ | 100.00 |
| July 19, 1980 | Attorney for Creditors' Committee | | 9,300.00 |
| Sept. 21, 1981 | Receiver (Interim award) | | 1,679.56 |
| Sept. 22, 1981 | Attorney for receiver (Interim fee) | | 4,000.00 |
| TOTAL FEES PREVIOUSLY AWARDED | | | $15,079.56 |

In addition, he has the following applications pending:

| | |
|---|---|
| Receiver (Sept. 15, 1980—Aug. 31, 1983) | $ 2,259.56 |
| Attorney for Receiver (balance of June 16, 1981 interim fee application) | 2,820.00 |
| Attorney for Receiver (May 20, 1981—July 27, 1983) | 5,320.00 |
| TOTAL PENDING APPLICATIONS | $10,399.56 |
| TOTAL OF PREVIOUS ALLOWANCES AND PENDING APPLICATIONS | $25,479.12 |

Fees previously paid to and applied for by all professionals in this case are as follows:

| | | |
|---|---|---|
| Previous fee awards | | $ 97,126.60 |
| Previous expenses | | 11,541.93 |
| | TOTAL | $108,668.53 |
| Pending applications | Fees: | $ 19,967.81 |
| | Expenses: | 280.00 |
| | TOTAL | $ 20,247.81 |
| Total of previous awards and pending applications (fees and expenses) | | $128,916.34 |

On October 24, 1980, the Court granted Mr. Shine's request to employ Robert Goldman, Esq., as collection attorney of accounts receivable, on a contingent fee basis. Since that time, virtually all benefit to the estate has come through Mr. Goldman's collection efforts, for which he has been well compensated. Mr. Shine seeks compensation of $5,320.00 for services as attorney for the receiver since May 20, 1981. While we do not doubt the expenditure of the time involved, the Court's concern about the size of professional fees in relation to the size of the estate; the need for conservation of the estate in this particular case, given the type of creditors involved; and the question of benefit to the estate of these services, where this has in effect been a collection case for more than three years—all militate in favor of the application of "the 'economic spirit' of the Bankruptcy Act". *In re Aminex Corp.*, 15 B.R. 356, 360 (Bankr.S.D.N.Y.1981) (footnote omitted).

It is not only Mr. Shine's application which is the subject of scrutiny here; so are the applications by two accountants for the receiver. The Court is also seriously

---

**3.** The Court is not unmindful of the fact that this 1977 case antedates the acceptance of the "lodestar" approach to compensation in the First Circuit.

**4.** As of August 31, 1983, total receipts by the estate were $629,577. Unsecured creditors have filed claims in the amount of $1,681,147.

tempted to reconsider awards previously made, particularly one of $16,500.00, plus expenses, to the attorney for the bankrupt corporation. After a review of the fees previously allowed, it is apparent that the lack of complexity of the case, the size of the estate and the make-up of the creditor body, simply cannot support fees and expenses in excess of $125,000.00. The debenture holders were not benefited to the extent indicated by the fees and expenses requested and already paid.

The Court assumes responsibility for this situation. With hindsight, it is clear that several of the prior awards were not justified, based on the value of the services of the estate, and as things have developed. In short, if all awards were being made at this time, some would be significantly different from those previously ordered. This case is instructive as to the wisdom (or lack of it) of granting interim and final fee awards long before the results of the efforts of the professionals can really be evaluated. In this case, despite the efforts of competent professionals, the result has been disastrous for creditors. At the same time, however, the Court is aware of and appreciates the problems and hardship involved in requiring professionals to wait for extended periods of time for compensation for prior services. All that can be said, perhaps, is that there are certain cases where such delay is necessary to avoid even larger injustice to creditors. To its regret, the Court did not follow that course in this case.

The Court concludes that it would be both unwieldy and confusing to adjust retroactively and sua sponte the awards previously made. *E.g.*, the attorney for the bankrupt corporation was paid almost four years ago. Because it is now apparent that the size of this award was not justified by the results achieved, the Court would reduce that fee if a kind of judicial laches, as it were, did not convince us that such an approach is inappropriate at this time. Pending applications, however, are adjusted as follows:

1. Allan M. Shine, Attorney for Receiver

| | |
|---|---|
| Application: | $8,140.00 |
| Allowed: | 5,000.00 |

2. Allan M. Shine, Receiver

| | |
|---|---|
| Statutory maximum allowance: | 2,259.56 |
| Allowed: | 1,500.00 |

3. Raymond F. Murphy & Co., Accountant for Receiver

| | |
|---|---|
| Application: | 2,510.00 ($4,000 interim award (plus expenses) previously granted on $6,510.00 total application) |
| Allowed: | 2,000.00 |

4. Kaplan Moran & Associates, Accountants for Receiver

| | |
|---|---|
| Application: | 7,058.25 (includes estimated future expenses) |
| | 280.00 expenses |
| Allowed: | 5,000.00 |
| | 280.00 expenses |

On a related note, on January 18, 1983, Robert Goldman, Esq., the collection attorney, notified the receiver that he was interested in purchasing all the remaining accounts receivable for $3,500. At that time said receivables included $34,112.32 in "partially collectable receivables" and $27,870.46 in accounts that Mr. Goldman designated "uncollectable receivables." Because of the potential for at least an apparent conflict of interest, the Court takes this opportunity to make known that it will not approve the purchase of any accounts receivable in this case by Mr. Goldman or his firm.