**In re POTTER'S GASOLINE DISTRIBUTION, INC., Bankrupt.**

**Bankruptcy No. 76–335.**

United States Bankruptcy Court, D. Rhode Island.

Aug. 17, 1984.

Tillinghast, Collins & Graham, Providence, R.I., for trustee.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

In this Old Act case, counsel for the trustee, the firm of Tillinghast, Collins & Graham, has submitted an application for compensation in the amount of $25,000 for services, and $2,843 for expenses. The trustee's account shows assets of $113,366, and allowed claims of general creditors totalling $779,124. If this application is allowed as requested, unsecured creditors will receive a 9.4% dividend.

As factual background, Potter's Gasoline Distributors, Inc. was petitioned by creditors into bankruptcy on August 6, 1976. The trustee was appointed and proceeded to liquidate the assets of the estate at public auction or private sale. An examination of the books and records disclosed that

the bankrupt corporation[1] had theft losses of $275,000 in the 18 months prior to bankruptcy, and that the losses were attributable to the bankrupt's president, George Potter. From that determination ensued the bulk of the legal activity for which compensation is now being sought. The trustee brought suit to recover $275,000 from Potter, and after five years of pre-trial preparation, which occupied the time of numerous attorneys and generated extensive legal research and memoranda, the matter was settled by an agreement providing for the estate to receive $50,000.

Before discussing the application, some preliminary observations are in order. To begin with, the Potter claim involved no great demand for sophisticated legal expertise, and the case itself did not present difficult issues requiring research and/or development of novel legal theories.[2] That this is a routine liquidation case is demonstrated by the trustee's summary of collected funds and their sources:

| | |
|---|---:|
| Rhode Island State Court Receiver's Account | $ 1,023.01 |
| Check Owed to Receiver | 200.00 |
| Private Sale of Automobile (Oldsmobile) | 1,300.00 |
| Judgment on Note Held by Providence Superior Court Receiver | 31,065.99 |
| $50,000 Promissory Note Secured by Real Estate (On Account) (Potter Dispute) | 47,095.58 |
| Sale of Scout Motor Vehicle | 300.00 |
| Release of Trustee's Interest in Certificate of Public Convenience to Dorothy Potter | 500.00 |
| Bank Credit | 8.32 |
| Credit from Tillinghast, Collins & Graham Client's Account (Potter Dispute) | 2,904.42 |
| | $84,397.32 |

Notwithstanding the trustee's representation that the results here were obtained through the diligent efforts of no less than sixteen attorneys, all of the documented time may not be fully compensated at maximum rates, because much of the work was ministerial, and did not produce a reasonably fair return for the creditors. Moreover, the use of so many different attorneys necessarily created a condition susceptible to some duplication and overlap of services.

The records submitted in support of the time charged have been meticulously prepared. The requested mixed hourly rate is entirely reasonable, and the level of professional services rendered is not in question. *See King v. Greenblatt*,[3] 560 F.2d 1024, 1026–27 (1st Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). Nonetheless, in this case the size of the estate *must* be taken into account, together with the number and dollar amount of creditors' claims. This is particularly true in setting fees in Old Act cases where compensation is influenced, if not governed, by principles of economy. *See Randolph v. Scruggs*, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903); *In re National Finance Corp.*, 41 B.R. 329 (Bankr. D.R.I.1984); *In re Penn-Dixie Industries, Inc.*, 18 B.R. 834 (Bankr.S.D.N.Y.1982); and Bankruptcy Rule 219.[4] Even in Code

---

**1.** In this case, of course, the real losses were suffered by the creditors.

**2.** The Potter litigation was time consuming in the sense that George Potter proved to be a defendant from whom it was most difficult to extract money which he clearly owed, and one where, by analogy, a crowbar would have been a more appropriate tool than the scalpel to accomplish the job that needed to be done.

**3.** According to *King v. Greenblatt*, the twelve factors to be considered in arriving at reasonable fee awards are:

1) the time and labor required; 2) the novelty and difficulty of the question presented; 3) the skill required to perform the legal services; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorney; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases.

560 F.2d at 1026–27.

**4.** Former Bankruptcy Rule 219 applies here, because this is an Old Act case, "unaffected by provisions of the new Bankruptcy Act." *Matter of U.S. Golf Corp.*, 639 F.2d 1197, 1201 (5th Cir.1981). *See also* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403(a), 92 Stat. 2683 (1978). Apart from the emphasis placed on economy, Rule 219 is otherwise substantively

cases, however, where relatively few assets are available for distribution, "the conservation of the estate and the interest of creditors" may not be overlooked. *See Furtado v. Bishop*, 635 F.2d 915, 920 (1st Cir.1980) ("lodestar" should be adjusted either upward or downward to reflect results obtained).

Considering the size of this estate in comparison with general creditors' claims that total in excess of three-quarters of a million dollars, it would be inappropriate, where the efforts of counsel have produced basically $50,000 (the bulk of the remaining assets should have been marshalled by the trustee in the normal course of his duties),[5] to allow the fee requested.

Counsel handled the preparation for the Potter lawsuit with extreme diligence. The facts, evidence, research and pleadings were no doubt carefully assembled, and the firm was prepared to litigate thoroughly, had the matter proceeded to trial. Nevertheless, the settlement produced $50,000 for the estate, not $275,000, and it should have become evident at some point early on that although liability was clear, the recovery would be limited by collectibility, and that whatever potential benefit the estate might gain as the result of continued high powered litigation would likely be consumed by legal fees. This is not to say that the claim should not have been pursued, but rather that the efforts of counsel should have been conducted on a more frugal, or economical level—as opposed to committing so much legal talent and time to this garden variety collection case.

Keeping in mind these considerations, we conclude that creditors should not be required to bear the full burden or cost of what may only be described as overkill, which failed to produce significant results. *See In re Sapolin Paints, Inc.*, 38 B.R. 807, 11 B.C.D. 875 (Bankr.E.D.N.Y.1984). *See also* Lavien, *Fees as Seen From the Bankruptcy Bench*, 89 Com.L.J. 136, at 137 (1984) ("more emphasis should be placed on results regardless of hours, and that should mean minimum payment where results are poor"). It is in this same context that we view certain of the routine services rendered, for example, the production of trustee reports and fee applications, which are elaborate and excessive. *See In re Hamilton Hardware Co., Inc.*, 11 B.R. 326, 331 (Bankr.E.D.Mich.1981). Had the result been more favorable to creditors, the award, of course, should and would be higher, but the plain fact is that much of the time expended was not greatly beneficial to the estate. *See King v. Greenblatt, supra,* at 1028. Under these circumstances, and in some token measure to recognize and to conserve the already diminished interest of creditors, the maximum fee that can or should be borne by this estate is $18,000, plus expenses in the amount of $2,400.

---

consistent with the criteria established under the Code, 11 U.S.C. § 330, pertaining to compensation of officers.

Bankruptcy Rule 219 states in pertinent part:

(c) *Factors in Allowing Compensation.*

(1) *General.* The compensation ... to a[n] ... attorney ... for services rendered in the administration of a bankrupt estate shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered *as well as to the conservation of the estate and the interests of creditors.* (emphasis added.)

5. Counsel seeks to be compensated for monitoring of certificates of deposit accounts on behalf of the trustee. These accounts, which consisted of assets collected by the trustee and counsel, earned interest totalling almost $29,000. The accrued interest amounts to approximately 25% of what is available for distribution, and in considering an appropriate attorney fee, we consider deposits of cash into certificates of deposits to be a normal duty of the trustee, for which Alfred B. Stapleton, Esq. will be paid $1,548.67, as his statutory trustee's fee.