**In re KORNSTEIN'S, INC. and Kornstein's Children's Department, Inc. (Consolidated) Bankrupt.**

**Bankruptcy No. 77–76.**

United States Bankruptcy Court, D. Rhode Island.

Dec. 27, 1985.

---

Sheldon R. Scoliard, Halpert & Scoliard, Providence, R.I., Trustee.

Allan Hanson, Providence, R.I., for Small Business Admin.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

After hearing on the amended application of Sheldon R. Scoliard, Esq., for compensation in the amount of $95,602.11 for services rendered as counsel to the trustee, an order was entered on September 12, 1985 awarding the applicant $25,000. On September 23, 1985 Mr. Scoliard filed a motion for reconsideration of the award, contending that we took into account only his services as collection counsel, and that he was not compensated for work performed as general counsel to the trustee. Memorandum in Support of Motion for Reconsideration.

The trustee's account shows total assets of $131,782.55. If the application is allowed as requested, the Small Business Administration (SBA), a $176,000 creditor, and general creditors totalling $154,119.78 will not receive a dividend. This Old Act case has been pending since March 14, 1977,

when Kornstein's, Inc. filed a Chapter XI petition. On May 5, 1977, an order was entered dismissing the Chapter XI case, adjudging Kornstein's, Inc. a bankrupt, and allowing the matter to proceed in straight bankruptcy under Chapter VII. Subsequently, on June 28, 1977, there was a substantive consolidation of the case with Kornstein's Children's Department, Inc. (former BK No. 77–77).

Mr. Scoliard (who was appointed trustee on May 5, 1977 and has since served as such)[1] filed a petition to employ himself as collection counsel, which we approved on June 28, 1977, effective March 14, 1977. Our approval only extended to services to be performed in collecting accounts receivable of the bankrupt, and the applicant's assertion that he was also authorized to act as general counsel to the trustee is unsupported by the record. In support of his motion for reconsideration, Mr. Scoliard submitted *a copy* of a petition to employ himself as general counsel to the trustee (and proposed order), which he allegedly filed in 1979. It is clear from the record, however, that the petition was not filed and that no such order was entered. Since Mr. Scoliard was never authorized to represent the trustee in matters other than collection of accounts receivable, his claim for compensation for services as general counsel to the trustee is *without merit*. *See In re Garland Corp.*, 8 B.R. 826, 828 (Bankr.D.Mass.1981); *see also* former Bankruptcy Rule 215(a) ("[t]he employment of any attorney ... shall be only for the purpose specified in the order ..."). Notwithstanding that technical point, however, and after considering *all* services rendered by the applicant (authorized and unauthorized), which he described at great length at the hearing on his application, we find that the total value of his services as general counsel as well as collection counsel does not exceed the $25,000 awarded, and

---

1. An order was entered on September 10, 1985 allowing Mr. Scoliard the statutory trustee's fee

in the amount of $2,595.14.

in so concluding, we affirm our order of September 12, 1985.[2]

Illustrative of our comment that the applicant left no stones unturned in his request for compensation is the following description of his services which obviously is not limited to collection efforts:

A. All accounts payable were checked against the schedules and creditors were notified where discrepancies were found. All creditors not originally listed on the schedules were notified of the bankruptcy. (March 1977)

B. The complaint of Rollins Communications was checked against the security instruments, the entire file was reviewed and instructions were given to Counsel as to the proposed Order to be entered. (April 1977)

C. Preparation of Schedules filed by Bankrupts in both cases later consolidated. (March 1977)

D. Preparation of Counsel's Report and assistance in preparing Trustee's two reports. (April 1983)

E. Attendance at various meetings and hearings before this Court as Counsel, with the S.B.A., Debtor, Attorneys representing creditors, Counsel to the Debtor, with various counsel in regard to the possibility of a Debtor-in-Possession.

F. Negotiations with Alexander Rooks and his Attorney in regard to the secured accounts receivable, the processing of same, the repurchase of the secured assets, various negotiations and preparation of necessary petitions and orders. (July-September 1977)

G. Search of the records of the Commercial Code Office of the Secretary of State, State of Rhode Island and obtaining of copies of all documents on file. (March 1977)

H. Negotiations leading to sale of real estate in Woonsocket, conferences with various agents and brokers, prospective purchasers, insurance agents regarding insurance on buildings, attendance at City Council meeting in regard to waiver and abatement of taxes, interest and penalties, attendance at closing, preparation and filing of necessary petitions and orders for private sale and abandonment of certain stipulated burdensome assets, and preparation of buy and sell agreements. (September-December 1977)

I. Drafting of Order to employ Counsel for specific purpose of representing Trustee in the fire insurance case in suit prior to bankruptcy, discussion of various legal problems with Counsel, attendance for one day at Superior Court, Providence, Rhode Island. (February 1981)

J. Preparation of documents, review of all papers in possession of the Trustee and consultation with both prosecution and defense attorneys involved in criminal arson trial of Arnold Kornstein and others. (July 1978)

K. Negotiations with various tenants of rental space of real estate in Woonsocket and collection of rents. (March-December 1977)

L. Collection of Accounts receivable (no law suits instituted.)

. . . .

M. Collection and Processing of Accounts Receivable in Suit: institution of suit proceedings, drafting of complaint, review of statement of account, entry of default or filing motion for summary judgment, attendance at hearing on motion, entry of judgment, service of execution or levy on real estate, drafting of application for citation in supplemental proceedings, attendance at hearing for same; attendance at hearing after service of a body attachment.

N. Processing objections to claims filed, drafting objections, negotiations with creditors and/or attorneys, drafting orders, filing orders, correspondence and telephone calls.

O. Separation of accounts receivable of Men's Action Shop, conferences with Raymond Spardello and Louis Geremia, preparing list of claims, payment of mon-

---

**2.** This decision constitutes our findings of fact and conclusions of law. *See* Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

eys collected to Louis Geremia, Trustee. (January-May 1978–1984)

P. Review of affairs of the Estate of Hattie Kornstein, review of all papers filed in Probate Court, conferences with Attorneys for the Estate, Arnold Kornstein and the S.B.A. re: pledged funds. (January 1978)

Q. Negotiation with Mr. Rossi re: operation of flea market with no lease in one of buildings from inception of bankruptcy to sale of real estate and collection of rents. (March-December 1977)

R. Examination of wage claims, separation of same into actual wages owed, vacation wages owed, blue cross trust claims and periodic examination of claims register.

S. Intensive investigation of alleged secured position of S.B.A. in regard to all documents filed and unfiled leading to determination that S.B.A. was not a secured party. (1977)

T. That there are additional undocumented hours for which records are lost or unkept. A reasonable percentage of 10% of time is included herein.

. . . .

#### Hourly Breakdown

| | | | | | |
|---|---|---|---|---|---|
| 1977 | 688 hours | 15 minutes | at $ 75.00— | $51,618.75 |
| 1978 | 134 hours | 20 minutes | at $ 80.00— | $10,746.67 |
| 1979 | 37 hours | 50 minutes | at $ 85.00— | $ 3,215.85 |
| 1980 | 52 hours | 25 minutes | at $ 90.00— | $ 4,717.50 |
| 1981 | 35 hours | 15 minutes | at $ 95.00— | $ 3,348.75 |
| 1982 | 18 hours | 10 minutes | at $100.00— | $ 1,816.67 |
| 1983 | 37 hours | 20 minutes | at $125.00— | $ 4,666.67 |
| 1984 | 39 hours | 15 minutes | at $150.00— | $ 5,887.50 |

....

1042:50      $86,018.36

Application for Allowance of Counsel Fees, May 24, 1985.

Additional Hourly Breakdown:

| | | | | |
|---|---|---|---|---|
| 1978 | 58 hours | 0 minutes | at $80.00— | $ 4,640.00 |
| 1979 | 46 hours | 15 minutes | at 85.00— | $ 3,931.25 |
| 1980 | 11 hours | 15 minutes | at 90.00— | $ 1,012.50 |
| | | | | $ 9,583.75 |

BALANCE CARRIED OVER:    $86,018.36
TOTAL    $95,602.11

First Amendment to Application for Allowance of Counsel Fees, July 18, 1985.

It is obvious that neither the application nor counsel's presentation at the hearing were confined to collection efforts, and considering the latitude afforded to Mr. Scoliard at the hearing on his application, it cannot be said that there was anything concerning his activities about which we have not heard.

Allan Hanson, Esq., representing the SBA at the July 25, 1985 hearing, asked that we carefully scrutinize the application in question, asserting that the legal fees sought were excessive in light of the benefit realized to the estate through counsel's efforts.

The principal source of guidance for the Court in awarding compensation in Old Act cases is former Bankruptcy Rule 219(c),[3] which provides that

[t]he compensation allowable by the court to [an] ... attorney, accountant, or other person entitled to compensation for services rendered in the administration of a bankrupt estate shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors.

It is the function of the bankruptcy judge in determining the reasonableness of fees[4] to strike a delicate balance after con-

---

**3.** Former Bankruptcy Rule 219(c) applies in this Old Act case, which is governed by the now repealed Bankruptcy Act of 1898. *See Central Trust Company v. Official Creditors' Committee of Geiger Enterprises, Inc.,* 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982); *Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.),* 639 F.2d 1197 (5th Cir.1981); *In re National Finance Corp.,* 41 B.R. 329, 330 nn. 1 & 2 (Bankr.D.R.I.1984). *See also* Bankruptcy Re-

form Act of 1978, Pub.L. No. 95–598, § 403(a), 92 Stat. 2683 (1978).

**4.** Bankruptcy courts are accorded broad discretion in determining reasonable fee allowances, and their awards will be disturbed only upon a showing of an abuse of that discretion. *In re Casco Bay Lines, Inc.,* 25 B.R. 747 (B.A.P. 1st Cir.1982).

sidering the "lodestar" approach[5] adopted by the First Circuit in *Furtado v. Bishop,*[6] 635 F.2d 915 (1980), in addition to the twelve factors[7] outlined in *King v. Greenblatt,* 560 F.2d 1024 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

In applying these standards, we are mindful of the "spirit of economy" which governs the setting of compensation in Old Act cases, and which requires us to consider as significant factors the conservation of the estate and the results obtained, as measured by return to creditors.[8] 2 *Collier on Bankruptcy* ¶ 330.02 (15th ed. 1985). We are also aware of our responsibility not to elevate the principle of economy to the exclusion of other considerations enumerated in former Bankruptcy Rule 219(c).

We recognize that the applicant successfully challenged the secured status of the SBA and that the sale of the bankrupt's Woonsocket real estate netted the estate $18,820.21, but it appears that the bulk of Mr. Scoliard's services related to the collection of 854 accounts receivable of the bankrupt. The applicant indicated that he had expended in excess of 1300 hours in processing the accounts, compared to 44 hours for other services performed as general counsel to the trustee. Report of Counsel to the Trustee, April 26, 1983. In a letter to the Court dated August 1, 1985, Mr. Scoliard reported that of total receivables of $70,455.58, he had collected $56,684.20. We question the reasonableness of the time spent by the applicant in his collection activities, since the fees sought for these services exceed the amount of money brought into the estate through his collection efforts.[9] This strongly militates in favor of the application of economic considerations, whereas approval of Mr. Scoliard's fee request would manifest this Court's endorsement of the idea that it is appropriate for an attorney to be compensated for services which benefit him personally, but are of no value to the estate (a proposition which we decline to adopt).

■ It should have been evident to counsel early on that whatever potential benefit the estate might gain as the result of continued collection activities would likely be consumed by legal fees, *see In re Potter's Gasoline Distribution, Inc.,* 41 B.R. 771 (Bankr.D.R.I.1984), and at that point the efforts of Mr. Scoliard should either have been conducted on a more frugal level, or the property abandoned, instead of committing so much time to collection activity which did not generate a worthwhile return to the estate in relation to the cost of such services. Creditors should not be required

5. This approach, which was developed in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3rd Cir. 1973), involves a calculation of the "lodestar" (number of hours reasonably expended multiplied by a reasonable hourly rate) which is then adjusted to reflect other considerations such as the contingent nature of the fee, delay in payment, quality of representation, and results obtained.

6. We recognize that this 1977 case antedates acceptance of the "lodestar" approach to compensation in this circuit.

7. 1) the time and labor required 2) the novelty and difficulty of the question presented 3) the skill required to perform the legal services 4) the preclusion of other employment due to acceptance of the case 5) the customary fee in the community 6) whether the fee is fixed or contingent 7) the time limitations imposed by client or circumstances 8) the amount involved and the results obtained 9) the experience, reputation and ability of the attorney 10) the undesirability of the case 11) the nature and length of the professional relationship with the client 12) awards in similar cases.

8. An attorney's fee should be set at the lower end of the spectrum of reasonableness in an action arising under the Old Act. *American Benefit Life Insurance Company v. Baddock (In re First Colonial Corp. of America),* 544 F.2d 1291 (5th Cir.1977).

9. We reach that conclusion as follows: According to Mr. Scoliard's own computations in his report to the trustee on April 26, 1983, over 96% of his time spent representing the trustee related to collection matters. He does not claim to have performed any legal functions after April 26, 1983, other than collection-related services. Since he did not indicate any difference in legal fees charged for collection and non-collection activities, it is reasoned that 96% of his requested fee ($91,778.02) related to collections, which far exceeds the amount collected ($56,684.20).

to bear "the full burden or cost of what may only be described as overkill." *Id.* at 773. The Bankruptcy Act was designed for the relief of debtors—not for the benefit of attorneys. Except in extreme cases, we cannot allow the assets of an estate to be totally absorbed by counsel fees. *See* 3A *Collier on Bankruptcy* ¶ 62.05[1] (14th ed. 1975). Had the result been more favorable to creditors, then of course higher compensation would be in order, but the plain fact is that here the time expended was not beneficial to the estate. *See Randolph & Randolph v. Scruggs,* 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903). *See also* Lavien, *Fees as Seen From the Bankruptcy Bench,* 89 Com.L.J. 136, 137 (1984) ("[e]mphasis should be placed on results regardless of hours, and that should mean minimum payment where results are poor"). We also wonder what would be the reaction of a private client of Mr. Scoliard's who was billed $91,778.02 for the collection of $56,684.20, which is the situation we have here. *See infra* n. 9.

Neither has counsel demonstrated that the requested fee is reasonable in light of the nature of the services performed, which did not require sophisticated legal expertise, development of novel theories, or extensive legal research. In fact, much of the collection work was performed by the applicant's paralegal assistant, at maximum rates, where a large part of the overall collection process involved ministerial and non-legal services. *See In re Bishop,* 32 B.R. 302 (Bankr.D.R.I.1983).

Many of the other (non-collection) services for which Mr. Scoliard requests compensation fall within the range of activities customarily performed by the trustee, and for which he has been compensated as trustee (e.g., noticing creditors and services in connection with the sale of the bankrupt's real estate). *See* Application for Allowance of Counsel Fees at 1–2, May 4, 1985; Trustee's First Interim Report at 3, April 26, 1983. The application is defective

in that it requests compensation in violation of the well recognized policy against awarding legal fees for non-legal services. *See Connelly v. Hancock,* 195 F.2d 864 (2d Cir.1952).

■ We note also that counsel requests compensation for services related to matters which were performed, at least in part, by other attorneys (e.g., complaint of Rollins Communications, Inc. to reclaim property (order for reclamation entered April 12, 1977, consented to by the attorney for the then debtor in possession);[10] sale of bankrupt's Woonsocket real estate (related services performed in large part by Gerald A. Oster, Esq.)).[11] It is fundamental that courts may not allow double compensation for the same services, and the fact that the applicant was privy to activities being performed by other counsel does not warrant compensation. *Cf. In re Sapolin Paints, Inc.,* 11 B.C.D. 875, 38 B.R. 807 (Bankr.E.D.N.Y.1984); *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705 (Bankr.W.D.Ky. 1982).

On August 4, 1977, Alexander Rooks, who loaned money to the bankrupt and retained a security interest in accounts receivable, filed a complaint seeking proceeds from the liquidation of the security interest, in the amount of $13,100, plus interest and attorneys' fees. On September 12, 1977, we entered an order granting the bulk of the relief requested by Mr. Rooks. Despite Mr. Scoliard's attempt to favorably characterize the result of his efforts in the Rooks' matter (Transcript of July 25, 1985 hearing at 5), we have no difficulty concluding that the services which the applicant performed did virtually nothing to benefit the estate.

It is clear that in his representation of the trustee, Mr. Scoliard was not faced with difficult legal issues or extraordinary time limitations imposed by client or circumstances. Also absent are elements of "undesirability of the case," or that the

---

**10.** Mr. Orodenker has been allowed compensation in the amount of $1250 for his services as counsel to the debtor in possession.

**11.** Mr. Oster has been allowed compensation in the amount of $1,000.

applicant was precluded from obtaining other employment due to his representation of the trustee.

Taking into account the applicant's collection activities which brought $56,684.20 into the estate, his successful challenge of the SBA's secured status, his efforts in connection with the sale of the Woonsocket real estate which netted the estate $18,-820.21, and all other legal services, we conclude that $25,000 is reasonable compensation. Considering the factors outlined in *King v. Greenblatt, supra,* as well as the "lodestar" approach discussed in *Furtado v. Bishop, supra,* we conclude that the results achieved, the size of the fees in relation to the size of (and benefit to) the estate, the need for conservation of the estate, and the interests of creditors (former Bankruptcy Rule 219(c)), are the factors which weigh most heavily in this case. For all of the reasons discussed above, after carefully considering the nature, value, and extent of the applicant's services, and considering our obligation to deny compensation for excessive, unnecessary and duplicative hours, (*see, e.g., In re Liberal Market, Inc.,* 24 B.R. 653 (Bankr.S. D.Ohio 1982)), we affirm our award of $25,-000.